THOMAS B. STOCKER, APPELLANT, V. NEMAHA COUNTY ET AL., APPELLEES.

FILED JUNE 30, 1904.   No. 13,285.

1. **Appeal: REVIEW.**  Where, on appeal from a judgment of the district court in a suit in equity, it is found that the evidence fully sustains the findings and judgment of the trial court, such findings will not be disturbed, but will be adopted by the court of review.

2. **Highways: DAMAGES.**  Where one files a claim for damages caused by the location of a public road, and accepts the allowance made him by the county board, he cannot thereafter maintain an action against the county for damages caused by opening such road, unless the same be negligently and unskillfully constructed and maintained.

3. **Res Judicata.**  Where a plaintiff in an action for damages alleges facts, proof of which would entitle him to recover, and there is a verdict and judgment against him, it will be conclusively pre-

sumed that each of the facts so averred was determined against him, and he cannot thereafter maintain an action for equitable relief against the same defendant based on the same facts.

APPEAL from the district court for Nemaha county: JOHN S. STULL, JUDGE. *Affirmed.*

*S. P. Davidson* and *G. W. Cornell,* for appellant.

*E. B. Quackenbush* and *Kelligar & Ferneau, contra.*

BARNES, J.

Thomas B. Stocker commenced this action in the district court to restrain the county of Nemaha, its board of commissioners and one Charles D. Nixon from keeping open a certain ditch running along the west side of a highway situated in that county known as the Half Breed road; to obtain a mandatory injunction requiring defendants to fill up and obliterate certain ditches, and to recover damages to his farm lands lying along the east side of said road alleged to have been sustained by him by surface water thrown upon his said land by reason of the careless, negligent and unskillful construction of said highway and ditches. A trial to the court resulted in a general finding and judgment for the defendants from which plaintiff has appealed. The pleadings are too voluminous to be set forth in this opinion. It is sufficient to say that the petition states facts which, if true, would constitute a cause of action against the county, and in addition thereto it charges the defendant Nixon with having cut a ditch from a lake or lagoon situated on his own land to and into the ditch, on the west side of the Half Breed road, thus augmenting the flow of water onto the plaintiff's land to his irreparable damage and injury. Nixon's defense is in substance a general denial; while the county not only denied the allegations of the petition, but also set up in its answer and relied on: First, an estoppel by conduct; and second, the defense of *res judicata,* or estoppel

by record and judgment.  The replies in effect are general denials.

Under the present law, and the rule announced in *Faulkner v. Simms*, 68 Neb. 299, the appeal requires us to go over all of the evidence and reach our own conclusions thereon.  A careful examination of the record and bill of exceptions discloses the following undisputed facts: The land southwest of plaintiff's premises slopes generally downward in a northeasterly direction toward the Nemaha river bottom where plaintiff's land is situated. The Half Breed road, commencing on the Auburn and Brownville road which runs east and west on the north line of section 22, a little east of the middle of the northeast quarter of that section, runs in a southeasterly direction, for the distance of something over 2 miles, passing the plaintiff's land and forming its western or rather its southwestern boundary.  This road also intersects another road or highway, called the Wheeler road, which runs due north and south on the section line between sections 22 and 23, township 5, north of range 14 east, at a point about 60 rods south of the Brownville road.  The Missouri Pacific railroad is constructed about 40 rods west of the Half Breed road, and runs nearly parallel thereto.  A considerable part of the east half of section 22, and all of section 23, in which plaintiff's land is situated, is low, level bottom land, lying in the valley of the Nemaha river which runs in a southeasterly direction half or three-quarters of a mile east of the highway in question for some 10 or 15 miles, where it empties into the Missouri river.  The railroad company has made several openings or culverts through its embankment for the purpose of allowing the surface water, which falls on the sloping land west of its line of road, to drain off onto the river bottom. Commencing in the year 1898 or 1899, and continuing from time to time until 1900 or 1901, the Half Breed road was established, constructed and opened for public travel, the plaintiff being one of the petitioners therefor.  It appears that all of the water which plaintiff alleges causes

the damage to his land is surface water; that which falls on the slopes to the west and southwest of the railroad track and highway in question. This water it is claimed is accumulated in the ditch made by the county in the construction of the public road, and is carried to a point west of the plaintiff's land, turned through a culvert in the highway, and allowed to spread out, over and upon his cultivated field. It further appears that some of the surface water, after it runs into the ditch on the west side of the Wheeler road, flows north to the Half Breed road and from there runs southeast in the ditch, which it is claimed is situated on the west side of that road, until it reaches the culvert above mentioned. It further appears that in order to facilitate the flow of the surface water from his land, the defendant Nixon has dug a small ditch about 26 rods long, in a northeasterly direction across the point of land situated between the two roads, and thus shortened the flow of the water, perhaps a third of a mile. There is no evidence showing, or tending to show, that the last named ditch drains any lake or spring or watercourse into the ditch on the Half Breed road; but, on the contrary, it simply carries off surface water caused by rains or melting snow from the lands to the west and southwest of the Wheeler road.

All of the other questions in this case are sharply contested, and the evidence relating to them is more or less conflicting.

The plaintiff claims that the Half Breed road is improperly and negligently constructed; that for that reason, and by the maintenance of a ditch on the west side thereof, the county has gathered up the surface water from the lands above described, and conducted it in a body through said ditch and thrown it upon his cultivated lands lying just east of the culvert above mentioned, which is designated in the record as culvert "B"; that if it were not for these wrongful acts on the part of the county, and the digging of the Nixon ditch, all of the water which flows onto his land would drain off to the east and north without

reaching his premises at all; while it is claimed on the part of the defendants that before the construction of the roads and ditches, before the Missouri Pacific railroad was built, and while the land in that vicinity was in a state of nature, unsettled and unimproved, the water complained of flowed by a slightly different route onto the plaintiff's land and rendered it unfit for cultivation in the same places and to a like extent as at the present time.

In order to maintain the issues on his part, the plaintiff employed a civil engineer, who surveyed the land in sections 22 and 23, including his farm situated in the last named section, and made a map or plat thereof with figures showing its contour. The defendants also employed a like expert, who performed the same services for them. These persons were called as witnesses, and, in addition to their oral evidence, presented their maps and figures to the court, in explanation of their testimony. Their statements differed but little; both testified that the lowest point on any of the lands in question, or in that immediate vicinity, is on the plaintiff's land, where he claims his crops have been destroyed; that from that point there is a gradual and almost imperceptible fall to the south and east into the Nemaha river. The engineer, called for the plaintiff, stated that the surface water, were it not for the road, ditches and culvert, would not reach the place where the damages are alleged to have been sustained; that a part of it would run off toward the north and east, and the balance would drain onto the plaintiff's land some 70 rods east of where it now flows. The surveyor called for the defendants testified that, were it not for the improvements complained of, all of the water, except in times of general overflows, would follow much the same course it does now; that some of it would pass around the point of the slight ridge west and north of the northwest corner of plaintiff's land, a little to the east of its present course, and finally reach the low ground immediately east of culvert "B," while the rest of it would flow onto his premises at another point about 70 rods east of his northwest cor-

ner, thus rendering two places wet and unfit for cultivation instead of one. A great number of non-expert witnesses were called and testified. Many of them were old settlers; some coming to the country as early as the year 1856; they were familiar with the situation of the plaintiff's land and the surrounding country, and had observed the course of the water complained of both before and after the roads and ditches were constructed; these witnesses testified that in early times the water ran in much the same course and direction as it does now; that the identical spot claimed to have been rendered unfit for cultivation was even then a low, wet, boggy piece of land; that when it was broken up it was so wet that the water ran in the furrows. It also appears that the water which falls on the land lying to the west and southwest of culvert "B" flows through certain openings or waterways in the track of the Missouri Pacific railroad into the wet place east of that culvert, and did so before the Half Breed road was constructed, that the ground there was so wet when the road was graded that it could not be worked with a road machine and could hardly be moved even with a common scraper. Of course the witnesses do not all agree on these matters, but the great weight and preponderance of the evidence establishes the foregoing facts.

There is no evidence in the record showing that the road was improperly or negligently constructed, except the statements of two or three witnesses who testify that culvert "B" is not in the proper place; that it should have been located about a half mile farther north and near the Nixon ditch, while the rest of the witnesses, including one of the engineers, stated that it is at the lowest spot on the road and the only proper place for its location. Many of the witnesses on both sides testified that the maintenance of the Half Breed road, which was made simply by plowing furrows on each side, and scraping the dirt therefrom into the center of the highway, does not cause any more water to flow onto the plaintiff's land than flowed there before its construction. So we are con-

strained to hold that the evidence amply sustains the general finding of the trial court. Indeed, we do not see how he could have found otherwise.

The evidence, so far as it relates to the acts of defendant Nixon, does not support the allegations of plaintiff's petition. It appears that Nixon's tenant at one time opened a small ditch from the lake or lagoon through which the water flowed as far as the land in question; that when plaintiff spoke to him about it he filled it up, and it has ever since remained in that condition; that the ditch which he dug from the Wheeler road across the point of land to the Half Breed road, does not increase the flow of water onto the plaintiff's premises. Therefore, the case as to Nixon was rightly dismissed.

It would hardly seem necessary for us to consider the defenses of estoppel and *res judicata* pleaded by the defendant county. However, we will dispose of these matters lest we be charged with overlooking them.

It is established beyond question that plaintiff, with others, petitioned for the location of that part of the Half Breed road which bounds his premises on the southwest; that he presented his claim for the damage which he believed would accrue to him by reason of the location and construction of the road, to the board of county commissioners of Nemaha county; that the compensation claimed was allowed, and he accepted and receipted for its payment. Ordinarily this would estop him from claiming any further damages by reason of the location of the road. It is claimed, however, that the compensation allowed him only included and embraced such damages as he would sustain by the proper construction and maintenance of the road; that if the road should be improperly constructed and should be maintained in such a manner as to flood his land with surface water and thus render it unfit for cultivation, he would still have the right to recover the damages caused thereby. This claim appears to be well founded. We think the courts generally have adopted this rule. But in this case the court found that

the county had not been guilty of any negligence in the construction and maintenance of the road, and therefore the plaintiff cannot recover.

Again, the record discloses that on the 28th day of November, 1900, plaintiff filed a claim for damages, which he alleged he had sustained during the years 1899 and 1900 by reason of the facts pleaded as the basis of this action, with the board of commissioners of the defendant county; that his claim was disallowed; that he appealed from the order of the board to the district court of said county where he filed a petition reciting the same facts on which he bases this action. In fact the petitions are almost identical with the exception of the prayer; that by a supplemental petition he sought to recover the damages sued for in this action. It is claimed, however, that this latter demand was withdrawn by leave of the court and was not litigated in that action. Issues were joined by pleadings almost identical with those filed in this action, and a jury trial was had which resulted in a verdict and judgment for the defendant county. So, even if it be conceded that the question of plaintiff's damages for the year 1901 was withdrawn from the consideration of the jury, yet that action was between the same parties, was based on identically the same facts, and presented the same issues that are joined in the case at bar. In that action it was found and adjudged that the road in question was properly constructed and maintained; that the county had not collected surface water in a body, and caused it, by ditches along the Half Breed road, to flow onto the plaintiff's land to his damage. Therefore, the questions of fact, on which he seeks to obtain equitable relief in this suit, have been settled and decided against him in a proper form of action by a court of competent jurisdiction. Where the same facts relied on for a recovery have been pleaded by the plaintiff in a former action, and in which proof of those facts would have resulted in a determination in his favor, the verdict and judgment in that suit having been against him, the record conclusively establishes an adjudication

of the issues in the subsequent action, and is a complete
bar to a recovery therein. *Slater v. Skirving,* 51 Neb. 108.

For the foregoing reasons, the judgment of the district
court is right and is therefore

AFFIRMED.