WILLIAM L. WINSTON, APPELLANT, V. THOMAS A. ARM-
STRONG ET AL., APPELLEES.

FILED OCTOBER 5, 1905. No. 13,857.

Evidence examined, and *held* insufficient to sustain the finding of
the trial court.

APPEAL from the district court for Sheridan county:
WILLIAM H. WESTOVER, JUDGE. *Reversed with directions.*

*John J. Sullivan* and *W. W. Wood,* for appellant.

*C. Patterson, contra.*

ALBERT, C.

This suit was brought for the foreclosure of a mortgage
made by the defendant, Thomas A. Armstrong, on the
24th day of June, 1890, to secure a note of even date given
by him to his father, payable in five years. The note was
indorsed and the mortgage assigned to the plaintiff after
maturity. Sometime after giving the note, the maker
thereof married, and his wife is his codefendant in this
suit. The defense is a want of consideration for the note.
The court found generally for the defendants and en-
tered a decree accordingly. The plaintiff brings the case
here on appeal.

The plaintiff claims that the note was given for a half
interest in a lot and store, stock of merchandise and some
other personal property sold to the defendant, Thomas A.
Armstrong, by his father. It is conclusively established
that from 1888 to 1890 the defendant, Thomas A. Arm-
strong, and his father conducted a mercantile business
under the firm name of T. A. Armstrong & Co., and the
property in question was a part of the assets of the firm;
that in 1890 the property was invoiced at $4,200, and the
father then transferred an undivided interest thereof to a
third party; whereupon he retired, and Thomas A. and a

third party continued the business. The contention of the plaintiff is that, at the time the father transferred the half interest to such third party, he also transferred the remaining half interest to Thomas A., and that such was the consideration for the note in question. The testimony of Thomas A. is, in effect, that for some years after becoming of age he remained with his father, and assisted him in farming, and later in the sheep business, under an indefinite arrangement that he should have an interest therein; that afterwards, in 1888, they engaged as equal partners in the mercantile business in this state, as above mentioned, for which the father furnished the capital, and in which his father gave him a half interest in consideration of his services after becoming of age; that they continued in this business for about two years, when the father sold his interest to a third party, as hereinbefore mentioned; that afterwards, to relieve the father's mind of the fear of want in his old age, he gave him the note in question, with the understanding that the mortgage securing it should not be recorded, and that the principal should not be paid, but the interest should be paid during his father's lifetime, when the note should be returned to Thomas A. Thomas A. is corroborated by a witness who testified to statements made by Thomas A.'s father, some two years before the note was given, that he had given Thomas A. a half interest in the business in consideration for his services after he was of age. The same witness testified that after the note was given the father told him that it was given voluntarily and to guarantee him a life support. These alleged conversations took place more than ten years before the suit was tried. The witness was a stranger to the transaction, and it will not be presumed that he especially charged his memory with the conversations. Under such circumstances it would be next to impossible for the witness to recall the conversations as they actually occurred, and, of necessity, he would omit many of the details which, if recalled, might give the conversation a different meaning from that which

**he, at** this late day, gathers from it. Another witness, produced to corroborate Thomas A., testified to his understanding that the note was merely given for the support of the father, and not as a part of the purchase money for the half interest in the business; but he gave none of the conversations upon which his understanding in this behalf is based, nor does it appear that he had any conversations with the father upon which it could be based. Consequently, his evidence on this point is of no value.

On the other hand, Thomas A.'s testimony is flatly contradicted by that of his father, who testified positively that the consideration therefor was a half interest in the lot, building and personal property to which we have heretofore referred. It is further contradicted by the testimony of his brother, who drew the instruments in question, was present when they were executed, and heard the conversation, and who corroborates his father as to the consideration for the note. A sister, who was a member of the family at the time, testified to conversations had between her father and Thomas A. immediately prior to the giving of the note, to the effect that Thomas A. should give her father a note for the half interest in the business. She was not present when the transaction was finally consummated, but her evidence is entitled to weight, because it contradicts that of Thomas A., in which he claims to have been given the half interest in consideration of his past services to his father, because the conversations to which she testified took place long after the time at which he claims the half interest was thus transferred to him. Besides, the circumstances seem to corroborate the testimony of the father. It does not seem likely that a son, intending to provide a life income of some $200 a year for his father, to that end would give his note, secured by mortgage, for $2,100 with interest at 10 per cent., payable in five years. Again, the face of the note is for just one-half the value of the property mentioned, as shown by the invoice, and for precisely the same amount as that paid by the third party for the one-half interest in the prop-

erty in question which the father transferred to him. These coincidences are highly significant.

We have not overlooked the fact that for two years the mercantile business was carried on by Thomas A. and his father, under the firm name of T. A. Armstrong & Co. At first sight this would appear to corroborate Thomas A.'s version of the transaction strongly. But he was a member of his father's household. For years he had been the active manager of his father's affairs. Considerable sums of money belonging to his father had passed into his hands, and at least one considerable debt of his had been paid by his father. It does not appear that any settlement was ever had between them, unless it was at the close of the mercantile venture. At the close of that venture, as before stated, an inventory was taken, and the property was invoiced at $4,200. For an undivided one-half a third party paid $2,100, and at about the same time Thomas A. gave the note in suit for a like sum. From the history of the transaction we are satisfied that, whatever may have been the interest of Thomas A. in the firm of T. A. Armstrong & Co., he had none in the property in question, which alone is claimed to have furnished the consideration for the note, and which had been bought with his father's money, save such additions as had been bought out of the proceeds of the business.

The case is here for trial *de novo,* and, in view of all the facts and circumstances, the conclusion is forced upon us that the note was given for an undivided one-half of the building, lot, stock of merchandise and other personal property, as claimed by the plaintiff, and that the finding of the trial court that it was given without consideration is not sustained by sufficient evidence. It is therefore recommended that the decree of the district court be reversed and the cause remanded, with directions that an account be taken of the amount due on the note and a decree accordingly entered.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions that an account be taken of the amount due on the note and a decree entered accordingly.

JUDGMENT ACCORDINGLY.