LUCY A. COLBY, APPELLANT, V. MARY J. FOXWORTHY,
APPELLEE.[*]

FILED DECEMBER 5, 1907.   No. 15,330.

1. **Alteration of Instruments:** BURDEN OF PROOF.   The burden is upon
the party alleging the material alteration of an instrument to
prove that it was altered by the holder thereof after the execution
and delivery of the same.

2. **Evidence** examined, and *held* insufficient to prove that the instru-
ments in controversy had been altered after their execution by
defendant.

APPEAL from the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE.   *Reversed with directions.*

*Flansburg & Williams,* for appellant.

*L. C. Burr,* contra.

EPPERSON, C.

This is an action for the foreclosure of a mortgage, and
for the fourth time appears in this court.   See 64 Neb.
216, 72 Neb. 378, 78 Neb. 288.   A history of the case is
given in the opinion by Mr. Commissioner ALBERT in 78
Neb. 288.   Since then a new trial has been had, resulting
in a judgment for defendant.   Plaintiff again appeals.

It is contended by defendant that the rules announced
in the opinion in 72 Neb. 378, *supra,* became the law of
the case, and terminate the issues now involved in her
favor.   But the issues there involved and disposed of are
no longer in the case, and it will be impossible to apply
the law there announced to the case in hand.   The court
then construed a certain amended petition, holding that
it stated a cause of action, and that the alleged spoliation
of the instrument sued on would not avoid the contract.
No doubt the rules announced became the law of the case;
but they ceased to operate on any issue in this case upon

---

[*] Rehearing denied.   See opinion, p. 244, *post.*

the withdrawal of the amended petition before the last trial. In commenting upon the opinion filed in this case (72 Neb. 378), the learned commissioner said: "Three propositions are involved in this controversy, and but three are determined in our former opinion, and are now governed by the rule of 'the law of the case.' The first of these is that the alteration of the instrument by inserting the word 'gold' before dollars was a material alteration; the second is that the defendant is not estopped from pleading this defense by paying without objection the nine interest coupons attached to the note, which contained this condition; third, that the alteration was made without defendant's knowledge and after the execution of the note and mortgage." As to the first and second propositions, no doubt exists but that they were established as the law of the case. However, we find nothing in the first opinion concluding that the alleged alteration was made after the execution of the note and mortgage. It is true, the trial court had found that such was the case, and the finding was mentioned in the opinion as a fact, but the sufficiency of the evidence was never determined by this court; instead, the case was remanded for further proceedings. It cannot be said that it was established as the law of the case that the word "gold" was inserted in the bond and mortgage after its execution. It was not so considered in the third opinion, wherein it was determined that a judgment could not at that time be predicated upon the findings made on the first trial. The lower court saw fit to grant a new trial, and, having done so, the district judge was required to make his findings from the evidence there adduced. There are three rules established as the law of this case: (1) That, if the word "gold" was inserted by the mortgagee after the execution and delivery of the mortgage and bond, it was a material alteration; (2) that the defendant by the payment of the interest coupons from time to time was not estopped from alleging a material alteration; and (3) the findings of fact at the first trial cannot be adopted by the trial court. These eliminate all

issues existing prior to the last trial, and confine our inquiry here to the sufficiency of the evidence to sustain the judgment rendered.

The bond in controversy is a printed form with blanks for amount, date, etc. Before the word "dollars" a blank line was filled, so that it now reads: "I promise to pay the sum of eight hundred and no-100 gold dollars," etc. The words and figures "eight hundred and no-100" were filled in with pen and ink, and the word "gold" stamped in the blank with a rubber stamp. In like manner a blank in the mortgage was filled out. The defendant asks the court to regard the inserting of the word "gold" as an obvious alteration, and to cast upon the plaintiff the burden of proving that it was made before the execution of the contract. It may properly be called an obvious alteration; that is, it is obvious that the word "gold" was inserted. It was no part of the form upon which the contract was written, nor was it necessary to make a complete contract between the parties. But we cannot agree with the defendant as to the rule of evidence she invokes. It is unnecessary to review the conflicting authorities as to the burden of proof in such cases. This court held in *Dorsey v. Conrad*, 49 Neb. 443, "Where a written instrument shows upon its face a material and obvious alteration, the presumption of law is that such alteration was made before the instrument was finally executed and delivered." It would seem from this that, unless the instrument itself indicated an alteration after its execution, and in the absence of extraneous evidence, the party seeking to enforce the instrument would prevail. It also follows that the party alleging a material alteration carries the burden of proving it. This, we think, is the better rule and in accord with the weight of authority. In *Hagan v. Merchants & Bankers Ins. Co.*, 81 Ia. 321, it is said: "If we are to presume from the fact of alteration that it was fraudulently made, then the burden is upon the plaintiff to rebut this presumption; but if no presumption arises,

or if the alteration is presumed to have been made before delivery, then the burden is upon the defendant. * * * If the instrument shows upon its face, as it is possible it may, that the alteration was fraudulent, then it proves more than the mere fact of alteration; but when the fact of alteration alone appears from it, and it is silent as to the time or authority by which it was made, there is no evidence upon which to base the presumption that it was fraudulently done." See, also, *Fudge v. Marquell,* 164 Ind. 447; *Wilson v. Hayes,* 40 Minn. 531, 4 L. R. A. 196; *National Bank v. Feeney,* 12 S. Dak. 156, 46 L. R. A. 732, 737. In *McClintock v. State Bank,* 52 Neb. 130, it was held, in a case wherein the note itself did not disclose the alteration, that the burden of proof is upon the party alleging the alteration. Such is the rule also where the presumption is that a change appearing upon the face of the instrument was made at or before its execution. 2 Cyc. 234, note 92, pp. 239, 240, note 18. No witnesses were called at the last trial, and the evidence there given consisted of depositions, the testimony given by witnesses at former trials, and written instruments, and, under the rule announced in *Faulkner v. Simms,* 68 Neb. 299, and *Roe v. Howard County,* 75 Neb. 448, we have examined the evidence and arrived at an opinion uninfluenced by the decision of the district court.

There is a conflict in the evidence. The defendant produced the testimony of Miss Dowden, who, when the loan was made, was employed as a clerk in the mortgagee's office. She also negotiated the loan for defendant. She testified positively that she read the bond and mortgage immediately before they were signed, and that the word gold was not therein. Defendant herself gave testimony on two occasions. First, in 1899, she testified in reference to the bond and mortgage: "Miss Dowden read them over to me. Of course, I did not read them over. * * * I didn't read them very carefully myself. I cast my eye over that to see the amount. * * * There was $800, and the word 'gold' was not there. * * * Q. You were

not looking in that mortgage to see that word 'gold'? A. No, sir; because, of course, my attention was limited, and I could not tell. All I was looking for was to see the number of dollars, of $800 gold dollars, and it was not there. Q. Where did this conversation in regard to gold occur? A. I think about the first time I went there." In 1906 the defendant gave her deposition, in which she said: "Q. At that time did you read over the note, coupons, and mortgage? A. Yes, sir; two different times. Q. State whether any agreement was made or attempted to be made with you to pay this loan in gold as testified to by John West? A. No, sir; there was not, and this young man is mistaken. Q. When was the word 'gold' stamped in the note, mortgage and coupons, if you know? A. Between the first day of September and the time when I got the money. It was not in there when I signed them, and when Miss Dowden and I read them over." Contrary to the defendant's testimony, we find the depositions of John West and E. C. Jones. The former was a clerk in the office of the mortgagee. He prepared the papers in controversy, and says: "Mrs. Foxworthy and Miss Dowden were in the office to sign up these papers. After some conversation between Mrs. Foxworthy and Miss Dowden, they left the office, Mrs. Foxworthy refusing to sign the papers at that time, as they were made payable in gold— the bond, mortgage and coupons—which was explained to her by both Miss Dowden and myself. There was no mortgages or loans made by the Lombard Investment Company at that time without the gold clause being inserted. They then left the office. Whether they returned again that same day or the next morning, I am not sure; but return they did, and Mrs. Foxworthy then signed the papers in our office. Before signing these papers, it was again made clear to her that they would be made payable in gold. * * * The word 'gold' was stamped in the body of the bond, coupons and mortgage, and the red-ink ruling in the body of the instrument was made before they were signed by Mrs. Foxworthy." E. C. Jones, cash-

ier of the mortgagee, in his deposition says that he examined the papers immediately after their execution, and that the word "gold" was there at that time, and he approved the papers and stamped them with his "O. K.," closed the loan, and paid defendant the money. The execution of the mortgage was also acknowledged before him as notary public. The mortgage itself shows that it was acknowledged on October 24, 1891, instead of September 1, as testified to by defendant. Miss Dowden's memory is shown to be defective, in that she remembered John West only as a schoolboy, and not as a fellow employee. It appears, and we are convinced, that he was an employee of the mortgagee, and was about 23 years of age when the papers in the controversy were executed, and that they were prepared for execution by him.

A preponderance of the evidence does not disclose that the alteration was made subsequently to the execution of the bond and mortgage. The plaintiff was entitled to a decree of foreclosure, and we recommend that the judgment be reversed and the cause remanded, with instructions to the lower court to make a computation of the amount due plaintiff and to enter a decree of foreclosure.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to enter a decree of foreclosure.

REVERSED.

The following opinion on motion for rehearing was filed April 10, 1908. *Rehearing denied:*

PER CURIAM.

This case is again before us on motion for a rehearing, which is asked for on the theory that we have overlooked and failed to consider certain evidence contained in the record, which it is claimed would have required us to affirm the judgment of the district court.

It is practically conceded in the briefs in support of the motion, and rightly, we think, that the only question left for determination is whether 'or not the word "gold" was stamped in the notes and mortgage sought to be foreclosed in this action before they were executed by the defendant. From the citations of authorities it seems quite evident that counsel have overlooked the fact that, under the statutes and the rules now in force for the trial of appeals in equity cases, we are not at all bound by the findings and judgment of the trial court, but must try such cases *de novo*, reach our own independent conclusions as to the weight, credibility and effect of the evidence, and render our judgment without reference to the conclusion reached by the district court, or the fact that the record contains some evidence to support it. *Grandin v. First Nat. Bank*, 70 Neb. 730; *Naudain v. Fullenwider*, 72 Neb. 221; *Michigan Trust Co. v. City of Red Cloud*, 69 Neb. 585; *Winston v. Armstrong*, 74 Neb. 604; *Omaha L. & B. Ass'n v. Hendee*, 77 Neb. 12; *Roe v. Howard County*, 75 Neb. 448, 5 L. R. A. (n. s.) 831; *Stocker v. Nemaha County*, 72 Neb. 255.

Before considering the evidence, it is necessary to dispose of the defendant's contention that the plaintiff should have no standing in this case because she has twice changed her theory as to when the word "gold" was stamped in the mortgage in question. It sufficiently appears that the mortgage was given to the Lombard Investment Company, and several months afterwards was sold to the plaintiff, who resides in New Hampshire. She personally knew nothing of the parties or the circumstances of the giving and making of the mortgage, and upon default of payment instituted foreclosure proceedings. Mrs. Foxworthy, the principal defendant, pleaded an alteration in the notes and mortgage subsequently to their execution by her. When the action was commenced, the Lombard Investment Company had failed, its managing officer in Lincoln was dead, and its employees were scattered. Upon the first trial in the court below, the only evidence upon the question of the alteration of the instruments was

furnished by the defendant. Not being able to meet this evidence, and having no means at hand at that time of showing that it was untrue, the plaintiff changed her theory of the case, and filed an amended petition, in which she admitted the alteration by the insertion of the word "gold" before the word "dollars," thereby making the notes and mortgage payable in gold. But she alleged that such alteration was not made by her, that it was an unauthorized act by some unknown person, and sought to recover upon that theory. Later on, however, John West, the son of the manager of the Lombard Investment Company at Lincoln, the person who prepared the notes and mortgage in controversy, was located, and the residence of Mr. Jones, the former cashier of that company, was ascertained, their evidence was procured, and it was thus made apparent to the plaintiff that the word "gold" was stamped into the notes and mortgage prior to their execution. Thereupon, she again changed her theory of the case, withdrew her amended petition, and elected to stand upon her original pleading.

Much fault is found because in our original opinion no special attention was given to the amended petition, which was offered in evidence, and by which the alteration of the notes and mortgage was admitted. We have not overlooked the admission, but did not mention it because we deem it quite immaterial. The plaintiff, when she filed her amended petition, had no personal knowledge of the controverted facts, and her admission was made by counsel and under circumstances which led her to believe that it was true, as claimed, that the instrument had been altered, as she then inferred, by some one other than herself, and without her knowledge. However, when she discovered a different state of affairs, she promptly withdrew the amended pleading, and the admission thus made should not be allowed to prejudice her substantial rights.

We have carefully read the evidence tending to show the alleged alteration, all of which is given by Mrs. Foxworthy and one Miss Dowden, both of whom have testified on two

different occasions in this case. On the first occasion, both of these witnesses testified that the notes and mortgage were signed on the 13th day of October, and the money was immediately turned over to Mrs. Foxworthy by the cashier, Mr. Jones. On that occasion they both said that Miss Dowden read over the notes and mortgage to Mrs. Foxworthy, who did not read them; that Mrs. Foxworthy only looked over Miss Dowden's shoulder to see that the amount written therein was $800; that beyond that she did not read or examine the papers. They also, by their evidence given at that time, conveyed the idea that Mr. Jones, the cashier, prepared the notes and mortgage. When they testified the second time, which was after the depositions of West and Jones had been taken, they both stated that the notes and mortgage were signed about the 1st of September, some six weeks previous to their date. On the second occasion they did not know who prepared the notes and mortgage, and they testified at that time that Miss Dowden and Mrs. Foxworthy both read over the papers carefully and reread several portions of them. For these and other reasons, which will be presently given, we are not impressed with the correctness of their statements.

Again, the evidence in this case shows that Mrs. Foxworthy paid nine of the coupon notes, in each of which the word "gold" was plainly stamped. Had she been the very careful, cautious business woman which her testimony taken the second time would lead one to infer she was, it would seem that, when she paid the coupons, she would have discovered the fact that they were payable in gold. There are other parts of Miss Dowden's testimony that seem somewhat peculiar. The evidence clearly shows that it was the custom, and had been for some time, for the Lombard Investment Company to make all of its loans payable in gold, and that the word "gold" was stamped before the word "dollars" in all of its notes and mort-gages. It appears that Miss Dowden was soliciting agent for that company. Yet she stated that the word "gold"

was not in the notes and mortgage, and, if it had been, it
would have startled her, and would have scared her so
that she would not have allowed Mrs. Foxworthy to sign
them. This testimony appears to us to be very incon-
sistent with the position she was holding. As above stated,
she was the agent of the Lombard Investment Company,
and, if she was in the habit of reading its notes and mort-
gages at all, she must have been familiar with the fact
that they were all made payable in gold. So we are un-
able to see why she would have been alarmed if she had
seen the word "gold" before the word "dollars" in the
notes and mortgage in question. Neither do we see any
reason for her statement that she would not have allowed
Mrs. Foxworthy to sign them if made payable in gold. In
her second deposition, after it had been discovered that
John West was the man who drew the notes and mortgage,
she testified that she had a recollection of him as a school-
boy, while it is conclusively shown by other evidence that
he was a young man about 23 years of age at that time,
and had been in the employment of the Lombard Invest-
ment Company in its Lincoln office for a long time prior
thereto. Under such circumstances, the evidence of Miss
Dowden and Mrs. Foxworthy as to the alleged alteration
is far from convincing. Upon the other hand, Mr. West
testified clearly, explicitly and positively that he prepared
the notes and mortgage in question, and that the word
"gold" was stamped into them prior to their execution.
Mr. Jones, the cashier, also testified that it was his duty
to examine all of the papers prior to the payment of any
money upon them; that he took Mrs. Foxworthy's acknowl-
edgment of the mortgage in question; that it was his
custom, after he had examined notes and mortgages, to
place thereon the letters "O. K. J," indicating that he had
examined them and found them correct. This mark ap-
pears upon the mortgage and the principal and coupon
notes; and from this Mr. Jones testified that he examined
the papers at the time he took the acknowledgment of the
defendant, and that he knew the word "gold" appeared

therein at that time. There is also evidence of other employees that it was the custom of the Lombard Investment Company to make all of its loans payable in gold. Upon this alone it appears to us that the clear weight of the evidence is in favor of the plaintiff, and we have no hesitancy in finding that the word "gold" was stamped in the notes and mortgage prior to their execution.

There are still some other facts which should be mentioned, and which we think are conclusive of the question. An examination of one of the coupons, which appears in the record, marked "Exhibit 4," under a microscope, discloses that the last part of the words "twenty-four and no-100," immediately preceding the words "gold dollars," overlaps the word "gold" which is in red ink, thus clearly showing that those words were written after the word "gold" was stamped in the instrument. It is not conceivable that Mrs. Foxworthy signed the notes before they were filled out, and, if they were filled out prior to her execution and signature, it is clear that at least one of the coupons had the word "gold" stamped in it at the time she signed it. This being so, it may be presumed that all were so stamped.

Again, an examination of the notes and mortgage shows that the written portions thereof are underscored with red ink, and that the spaces between the written and the printed parts of the mortgage are filled with red-ink lines. The words "800 and no-100" are written in the middle of a blank line, and the first and last parts of this line are filled with red-ink marks. At first Mrs. Foxworthy testified that the red-ink lines were not in the instrument when she signed it; but afterwards modified her testimony by saying that she did not know about it.

For the foregoing reasons, together with others suggested by the evidence, we are of the unanimous opinion that the defendants failed to show by a preponderance of the evidence any alteration in the notes and mortgage in question. We therefore conclude that our former opinion is right, and the motion for a rehearing is

OVERRULED.