CLINTON J. ANDERSON, APPELLEE, V. CHICAGO & NORTH-
    WESTERN RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 15, 1911.    No. 16,272.

1. Carriers: DISCRIMINATION: STATUTORY PROVISIONS.    Article V, ch.
    72, Comp. St. 1909, was enacted for the purpose of preventing
    unjust and unlawful discrimination by common carriers, and
    section 1a of that article, in order to accomplish that purpose,
    provides a reasonable method of preserving written evidence
    of the fact that cars were ordered by the shipper for the trans-
    portation of his live stock, the date of his order, and the time
    when the cars were to be furnished.

2. ————: ————: EVIDENCE.  Where, in an action for damages for
    an unlawful discrimination by the failure or refusal of the
    carrier to furnish cars for the transportation of live stock, it
    appears that the shipper has made a written order therefor in
    the book which the law provides shall be kept for that purpose,
    his proof as to the date of his order and the time when the
    cars were to be furnished to him should ordinarily be confined
    to his written order.

3. ————: ALTERATION OF INSTRUMENTS: BURDEN OF PROOF.  Where
    it is claimed that the order was changed or altered after it was
    signed by the shipper, the burden of proving that fact is on
    the one who asserts it.

APPEAL from the district court for Antelope county:
ANSON A. WELCH, JUDGE.  Affirmed in part and reversed
in part.

B. T. White, B. H. Dunham and C. C. Wright, for ap-
pellant.

N. D. Jackson and C. H. Kelsey, contra.

BARNES, J.

Action to recover damages for delay in the transporta-
tion of live stock and for an alleged unlawful discrimina-
tion.  The plaintiff had the verdict and judgment, and
the defendant has appealed.

The petition in the trial court contained three counts or causes of action. The first two counts were for delays in transportation, and it is contended by the defendant that the district court erred in allowing the jury to consider the time the stock was in defendant's yard awaiting shipment as a part of the delay. We think the record fails to support this contention. The evidence seems to cover only the delay which occurred after the stock was loaded in the defendant's cars for shipment, and before they reached the market in South Omaha, with its consequent effect upon the condition of the cattle and their market value. The record contains competent evidence which seems to sustain the verdicts rendered upon those counts and the judgment entered thereon. We are therefore of opinion that to that extent the judgment of the district court should be affirmed.

As to plaintiff's third cause of action, a more serious question arises. That cause is based on an alleged unlawful discrimination against the plaintiff, and it is stated, in substance, in the petition, that on the 2d day of October, 1907, the plaintiff was the owner of and had in his possession 233 head of cattle at Cody, Nebraska, which he desired to immediately ship over its line of railroad to the market in South Omaha, Nebraska; that for that purpose he orally requested the defendant to furnish him six cars; that the defendant failed and refused to furnish such cars or any part thereof; that again on the 14th day of October, 1907, he requested and demanded of defendant that the cars for the transportation of his said stock be immediately furnished; that the defendant failed and refused to furnish such cars or any part thereof until the 28th day of October, 1907; that the defendant was at all times from and between the 2d day of October, 1907, and the 28th day of October, 1907, possessed of suitable and sufficient equipment for the transportation of such stock; that on the said 2d day of October, 1907, and from that date continuously until the 28th day of October, 1907, the defendant unlawfully and unduly discriminated against the plaintiff by

furnishing cars daily to divers other shippers of live stock, whose names the plaintiff is now unable to state; that on the 28th day of October, 1907, the defendant furnished the plaintiff with cars for transportation of his stock, and that plaintiff immediately delivered said cattle to the defendant for transportation to South Omaha, Nebraska; that defendant delivered said cattle to the plaintiff at South Omaha, Nebraska, on the 29th day of October, 1907; that the net weight of the plaintiff's said cattle delivered at South Omaha, Nebraska, by the defendant as aforesaid was 134,000 pounds; that the market price of cattle, such as the ones shipped by plaintiff as aforesaid, and the price received by the plaintiff, was on the 29th day of October, 1907, 75 cents per hundred pounds lower than the price paid for such cattle on the date which said cattle would have been in the market at South Omaha had defendant complied with the request of the plaintiff and furnished cars at the dates on which the plaintiff requested and demanded the same; that, by reason of the failure and refusal of the defendant to furnish the cars aforesaid, the plaintiff sustained damages in the sum of $1,005, for which sum, with interest from October 29, 1907, he prayed judgment.

The defendant, by its answer, denied the foregoing allegations, and alleged as a further and separate defense thereto that the only order for cars for the shipment of the cattle in question made by the plaintiff was on the 14th day of October, 1907, at which time he made and signed an order on the book kept by the defendant company at Cody, Nebraska, whereby he ordered seven cars for shipment of the cattle in question on the 27th day of October, 1907; that the cars were furnished at the time ordered, and that said order was the only one ever given as required by law, and that any and all oral requests or conversations were merged and therein superseded and countermanded. To the defendant's answer there was a reply denying each and every allegation therein contained.

It appears from the record that the cause was tried as one for an unlawful discrimination, and it seems to be conceded that that was the nature of the plaintiff's third cause of action.   Upon the trial the plaintiff was permitted to testify, over the defendant's objections, that he orally ordered the cars for the shipment of the stock in question on the 2d day of October, 1907; and that he again orally ordered said cars on the 14th day of October, 1907. After the plaintiff had produced his evidence, the defendant was permitted to introduce as a part of its defense an entry in the book described in its answer, which was kept for use at its station in Cody, Nebraska, in accordance with the provisions of section 10555, Ann. St. 1909, which reads as follows: "All shippers of grain, live stock and all other freight in car-load lots, whether as individuals shipping their own grain, freight, or as persons, firms, corporations or associations engaged in the general business of buying and shipping as aforesaid, shall enter written application for cars in a book kept for that purpose subject to public inspection by the station agent nearest to the point at which cars are wanted, or any other person in charge of the railroad company's business at a shipping point, stating the number of cars desired, when desired, and for what class of freight cars are to be used, and what point of the railroad line such cars are wanted, the same being some place at which the railroad company usually leaves cars to be loaded and unloaded, and also the destination of such cars, who shall keep a book for said purpose open for the inspection of the public."   This order the plaintiff admitted he had signed; and it conclusively shows that on the 14th day of October, 1907, the plaintiff made a written order for the cars in question which were to be furnished to him on the 27th day of that month.

It appears, without dispute, that the cars were furnished to him at Cody, at the time named in the order, and that he drove his cattle from the ranch on that day and placed them in the defendant's yards for shipment on the following morning.   It further appears that, in order to

avoid the effect of the written order above mentioned, the plaintiff testified that he did not know what it contained, and that, so far as he knew, it might have been changed after it was signed by him. On the other hand, the defendant's agent at Cody testified that he had no recollection of the plaintiff's having given him an oral order for the cars mentioned in the written order; that the order was in the same condition as it was at the time it was signed by the plaintiff; that he filled out the order in the presence of the plaintiff, turned the book around to him, and the plaintiff signed it; that the book was one kept in the office of the railroad company at Cody in accordance with the provisions of the statutes, and that no cars were furnished to any one at his station except such as were ordered in writing upon that book, and that no discrimination had been practiced against the plaintiff. There was no allegation in plaintiff's reply that the book had been changed or altered in any manner, and, notwithstanding the foregoing facts, the court instructed the jury as follows: "You are instructed that the burden of proving the written order for cars alleged to have been signed by the plaintiff on October 14, 1907, is on the defendant, and before you would be justified in finding that such written order superseded a prior order, a fair preponderance of the evidence must show that plaintiff signed such written order *in the form in which it was introduced in evidence.*" The court thereby placed the burden of proof upon the defendant to show that the order had not been changed or altered after it was signed by the plaintiff. This is one of the grounds of error assigned by the defendant.

The record discloses that the written order in question bears upon its face no evidence of any change or alteration whatsoever; and, the plaintiff having admitted that he signed it, the burden of proving that it had been changed or altered after he had appended his signature thereto was upon him according to the well-settled rule which has been adopted in this state. *McClintock v. State Bank,* 52 Neb.

130; *Dorsey v. Conrad,* 49 Neb. 443; *Colby v. Foxworthy,* 80 Neb. 239.

The giving of an instruction which places the burden of proof upon the wrong party is reversible error. *Anderson v. Kannow,* 3 Neb. (Unof.) 686.

Defendant further contends that the court erred in giving instruction 9 upon his own motion. By that instruction the plaintiff was allowed to recover on his alleged oral order for cars, and without regard to his written order which superseded his oral order, if any, to wit, the alleged order of October 2. The jury were told, in substance, that the only question in relation to the third cause of action was whether or not the plaintiff had requested the cars on October 2, and they had not been furnished until October 27. It is contended that by this instruction the trial court ignored and practically nullified the provisions of article V, ch. 72, Comp. St. 1909, relating to rates and unjust discriminations, which contains the section of the statutes above quoted. It is argued that the statute in question is mandatory; that it should be construed to be mandatory and conclusive in order to accomplish the object intended by the legislature. The statute requires that the book described therein shall be kept open for public inspection in order that shippers may have ready access to the evidence as to the cars ordered, to consult the same as to the probabilities of receiving cars, and to prevent any claim on the part of the railroad company that it had oral orders antedating the written orders given by shippers. It seems clear that if this statute is held to be directory or permissive, and not mandatory and exclusive, then the door is still open by which a railroad company may claim that, while the book required by the statute to be kept did not show any prior orders, yet it had oral orders, made days and weeks in advance, which it was required to fill in advance of the orders entered upon the book and signed by the shippers. Before the passage of the act in question, frequent controversies arose between the shippers and the carriers as to when the cars were

ordered and when desired by a shipper. In order to prevent controversies of this kind, the legislature provided, among other things, that the shipper shall enter his written order in this book, kept according to the statutory provisions, and that when the order is thus entered it shall be the duty of the railroad company to supply all cars so applied for in the order of application. It would seem therefore that the entry of the order upon the book kept by the railroad company was a prerequisite—a condition precedent to the right to maintain an action for damages for unlawful discrimination in furnishing cars for the shipment of live stock. This is a reasonable regulation and a proper and necessary mode of procedure to lay the foundation for an award for damages upon the ground of unjust and illegal discrimination. This statute imposes no hardship upon the shipper and is fair both to him and the railroad company, and, if enforced, it will obviate disputes between shippers and carriers and prevent discriminations in favor of one shipper and against another.

In construing a statute like the one in question, the supreme court of the United States in *Texas & P. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, said: "While repeals by implication are not favored and a statute will not be construed as abrogating an existing common law remedy, it will be so construed if such pre-existing right is so repugnant to it as to deprive it of its efficacy and render its provisions nugatory."

In *District Township of the City of Dubuque v. City of Dubuque*, 7 Ia. 262, 276, it is said: "Affirmative words may, and often do, imply a negative of what is not affirmed, as strongly as if expressed. So, also, if by the language used a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise. Affirmative expressions that introduce a new rule imply a negative of all that is not within the purview."

It may be said, however, that as the statute in question

does not abrogate the plaintiff's right to maintain a common law action for unjust discrimination, such right of action still remains, but it is competent for the legislature to require shippers, in order to lay the proper foundation for the maintenance of such an action, to make written instead of oral orders for such cars as they may need in the shipment of live stock. We are therefore of opinion that the method pointed out by the statute is exclusive. To hold otherwise would be to render the statute unavailing and in effect nullify its provisions.

It was suggested upon the oral argument, and is tentatively stated in plaintiff's brief, that the action was simply one for damages based on the failure of defendant to furnish cars to the plaintiff within a reasonable time, and not one for unlawful discrimination. If this were true it would not avail the plaintiff, for the record discloses that the defendant upon the trial offered competent evidence to show that, owing to the unprecedented demand for cars for the shipment of live stock during the month of October, 1907, it was absolutely unable to furnish the cars desired by the plaintiff before the 27th day of that month. It offered to show the extent of its equipment for stock shipping purposes in the year 1906, together with the number of cars shipped over its line of road, upon which the station of Cody is situated, for that year. It offered to show the number of cars of live stock actually shipped over that division of its road during the month of October, 1907. It also offered evidence to show that its increase in equipment had more than kept pace with any demand that within reason might have been expected for that year. It offered evidence of the number of cars of live stock shipped over that division of its road in the month of October, 1908, and the evidence thus offered showed conclusively that the number of such cars transported in October, 1907, exceeded by 670 the number transported either in the month of October, 1906, or 1908. In fact the evidence thus offered and excluded, over defendant's exceptions, if believed by the jury, would have been a complete defense

to that kind of an action. The exclusion of this evidence was reversible error, and therefore from any point of view the judgment of the district court as to that cause of action must be reversed.

The record discloses that by their verdict the jury found and returned a separate amount as to each cause of action and the court rendered judgment accordingly. This enables us to affirm the judgment of the district court as to plaintiff's first and second causes of action and reverse it as to the third cause of action, which is accordingly done, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

JUDGMENT ACCORDINGLY.